**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------x
IN RE: FOSAMAX PRODUCTS LIABILITY    :    MDL No. 1789
LITIGATION                           :
_____ :    _____
                                  x
*This Document Relates to*           :    1:06-cv-5087 (JFK)
                                     :
<u>Barbara Anne Miller v. Merck</u>   :
<u>& Co., Inc.</u>, 1:06-cv-5087(JFK) :    **OPINION & ORDER**
                                     :
------------------------------------x

    <u>APPEARANCES</u>:

        FOR PLAINTIFF BARBARA ANNE MILLER:

            Daniel A. Osborn, Esq.
            OSBORN LAW, P.C.

        FOR DEFENDANT MERCK & CO, INC.:

            Norman C. Kleinberg, Esq.
            Theodore V.H. Mayer, Esq.
            William J. Beausoleil, Esq.
            HUGHES HUBBARD & REED LLP

            Paul F. Strain, Esq.
            M. King Hill, III, Esq.
            David J. Heubeck, Esq.
            VENABLE LLP

**JOHN F. KEENAN, United States District Judge:**

    In this multidistrict litigation, hundreds of product liability actions have been filed by individuals who allege to have developed osteonecrosis of the jaw ("ONJ") from ingesting defendant Merck & Co., Inc.'s ("Merck") prescription osteoporosis drug, Fosamax. Before this Court is Merck's motion to dismiss the complaint of a single plaintiff, Barbara Anne

Miller ("Miller"), on the ground of forum non conveniens. For the reasons that follow, the motion is granted.

## BACKGROUND

Plaintiff Miller is a citizen and resident of England. She alleges to have developed ONJ from ingesting Fosamax, manufactured by defendant Merck, and Actonel, manufactured by defendants Aventis Pharmaceuticals, Inc. ("Aventis") and Proctor & Gamble Pharmaceuticals, Inc. ("P&G"). Miller provides in her sworn profile form that she was prescribed and ingested the drugs at issue in England and received medical treatment in England for a number of oral conditions, including ONJ.

On June 30, 2006, Miller filed a Complaint in this Court asserting claims of strict liability, negligence, and breach of warranty. On August 16, 2006, the Judicial Panel on Multidistrict Litigation (the "JPML") ordered the transfer of all pending actions against Merck relating to Fosamax before this Court for coordinated pretrial proceedings. Since 2006, Merck and the Plaintiffs Steering Committee (the "PSC") have engaged in substantial discovery, and three bellwether cases have been selected for trial.

Merck, joined by defendants P&G and Aventis, now moves to dismiss Miller's Complaint on the ground of forum non conveniens. Merck argues that Miller's claims have little relationship to the United States and therefore should be

dismissed so they can be litigated in England. Merck claims that the public and private interests on balance demonstrate that this action should be litigated in Miller's home country. Regarding this point, Merck notes, among other things, that: (1) Miller was prescribed Fosamax and Actonel by doctors in England; (2) Miller ingested these drugs in England and as a result allegedly sustained injuries there; (3) Miller received treatment for oral conditions in England; and (4) Fosamax and Actonel were marketed and sold in England subject to its regulatory scheme.

Plaintiff does not dispute these facts. Plaintiff argues, however, that Merck incompletely and inadequately disclosed facts relevant to the balance of the public and private interests, and therefore it has failed to satisfy its burden of establishing that the case should be dismissed from Plaintiff's selected venue. Plaintiff notes that Merck has not (1) disclosed where the drugs ingested by Miller were manufactured; (2) disclosed pertinent information regarding the approval and regulation of Fosamax and Actonel in the United Kingdom; or (3) disclosed the location of the individuals that the parties would likely call as witnesses at trial. Plaintiff also argues that private interests favor adjudicating this case in the United States, as the majority of documentary evidence, including Miller's medical records and Merck company records, already has

3

been compiled in the United States since this multidistrict litigation began roughly three years ago.

## DISCUSSION

### I.   The Forum Non Conveniens Standard

"The doctrine of forum non conveniens allows a court to decline jurisdiction, even when jurisdiction is authorized by a general venue statute." In re Union Carbide Corp., 634 F. Supp. 842, 845 (S.D.N.Y. 1986), aff'd 809 F.2d 195 (2d Cir. 1987), cert. denied, 484 U.S. 871 (1987); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07 (1947).  The Supreme Court has declined to "lay down a rigid rule" to govern the forum non conveniens determination, but emphasizes a flexible approach that "turns on [the] facts." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981) (citation omitted).  The Court of Appeals for the Second Circuit has developed a three-step process for the district court to follow in exercising its discretion.  The standard requires the Court to:  (1) determine the degree of deference to afford the plaintiff's choice of venue; (2) consider the adequacy of defendant's proposed alternative forum; and (3) "balance factors of private and public interest to decide, based on weighing the relative hardships involved, whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum suggested by the defendant." Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003);

see also Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005); Iragorri v. United Tech. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc).

**A.   Appropriate Amount of Deference**

The forum non conveniens analysis begins with a presumption in favor of the plaintiff's choice of forum, as the court can assume that it is convenient. Piper Aircraft, 454 U.S. at 255; Gulf Oil, 330 U.S. at 508 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). However, "[i]t is well settled in this Circuit that a foreign plaintiff's choice of forum deserves less deference than the same choice by a domestic plaintiff." Turedi v. Coca-Cola, Co., No. 06-5464-cv, 2009 WL 1956206, at *2 (2d Cir. July 7, 2009). In such circumstances, "it is 'much less reasonable' to presume that the choice was made for convenience" and "a plausible likelihood exists that the selection was made for forum-shopping reasons." Iragorri, 274 F.3d at 71 (citation omitted).

The Court cannot, however, "rely exclusively on plaintiffs' citizenship in determining that less deference should be accorded to plaintiffs' choice of forum." Niv v. Hilton Hotels Corp., No. 06 Civ. 7839, 2008 WL 4849334, at *3 (S.D.N.Y. Nov. 10, 2008); see Norex, 416 F.3d at 157 (reversing dismissal on the grounds of forum non conveniens where the district court

5

relied "almost exclusively on the presumption that a foreign plaintiff's choice of a non-home forum is inconvenient"). Rather, as explained in Iragorri, the degree of deference provided to the plaintiff's choice of forum "moves on a sliding scale depending on several relevant considerations."[1] 274 F.3d at 71. "[T]he greater the plaintiff's or lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States," the greater the deference that will be provided to Plaintiff's choice of forum. Id. at 72; see Aracruz Trading Ltd. v. Japaul Oil & Mar. Servs., PLC, No. 08 Civ. 3511, 2009 WL 667298, at *3 (S.D.N.Y. Mar. 16, 2009) ("The key to the analysis is distinguishing between a plaintiff's legitimate right to select a forum and mere forum-shopping that is designed to burden the defendants or to give

---

[1] The Iragorri Court provided examples of considerations that affect the amount of deference that should be provided to plaintiff's choice of forum: "[F]actors that argue against forum non conveniens dismissal include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." 274 F.3d at 71. On the other hand, less deference should be provided if it appears that plaintiff's choice of the United States forum was motivated by forum-shopping reasons, such as "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and

6

the plaintiff a tactical advantage."); F.D. Import & Export Corp. v. M/V Reefer Sun, No. 02 Civ. 2936, 2003 WL 21396658, at *3 (S.D.N.Y. June 17, 2003) ("In sum, courts should give greater deference to the plaintiff's chosen forum when the choice is based on legitimate factors . . . and give less deference when the plaintiff is seeking a tactical advantage that may result from peculiar conditions . . . .").

Applying the sliding scale approach, Plaintiff's choice of forum deserves little deference. Plaintiff Miller has no apparent connection to the United States or New York. She was born in the United Kingdom and currently lives there. Neither the Complaint nor Plaintiff's opposition to the motion to dismiss elucidates any connection between Miller and New York. The litigation itself similarly is devoid of any significant connection to New York. Miller was prescribed Fosamax and Actonel in England. The Fosamax and Actonel that Miller ingested in England was marketed and sold in England subject to its regulation of pharmaceuticals. Her alleged injuries were suffered and treated in England. The corporate defendants conduct business in New York, yet they are not incorporated in New York nor do they maintain their principal place of business here. It appears that the only link between this action and New York is that New York is the home of

---

expense to the defendant resulting from litigation in that forum

Miller's attorney, who also represents before this Court many of the United States plaintiffs that have filed suit against Defendants for their alleged injuries caused by Fosamax and Actonel in the United States. It is fair to assume under these circumstances that the New York forum was selected for tactical purposes. Pollux, 329 F.3d at 74 ("[T]he plaintiffs and their case have only a faint connection to the United States and thus their choice of forum does not merit the same substantial deference afforded to a suit initiated in a plaintiff's home forum."); Cavlam Bus. Ltd. v. Certain Underwriters at Lloyd's, London, 08 Civ. 2225, 2009 WL 667272, at *3 (S.D.N.Y. Mar. 16, 2009) (reducing the amount of deference provided to plaintiff's choice of forum in part because plaintiff had "no apparent connection to the United States" and "plaintiffs' papers are devoid of any indication that they otherwise maintain a bona fide connection to the United States or to this district"); Aguas Lenders Recovery Group, LLC v. Suez S.A., 06 Civ. 7873, 2008 WL 612669, at *6 (S.D.N.Y. Mar. 3, 2008) (finding that plaintiff's choice of forum was "motivated by tactical advantage" because plaintiff and the allegations had "no ties to United States other than plaintiff's place of incorporation and the location of plaintiff's attorneys").

---

. . . ." Id.

Plaintiff's papers do not provide any other legitimate justification based on convenience for her choice of the New York forum. It may appear as if Plaintiff sought efficiency and convenience by filing this action in the court where hundreds of actions have been transferred for pretrial coordination. Indeed, the JPML found that pretrial consolidation in this Court "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." (JPML Order, at 2.) However, the JPML ordered consolidation two months after Miller filed her Complaint. At the time she chose this forum, Plaintiff did not know if, or where, the JPML would order consolidation.

Considering the foregoing, it appears that Plaintiff's choice of forum was made for tactical purposes and not from a bona fide connection to this district, and thus it deserves little deference. This does not end the analysis, however. See Iraggorri, 274 F.3d at 74 ("[A] lesser degree of deference to the plaintiff's choice bolsters the defendant's case but does not guarantee dismissal."). For dismissal to be appropriate, the proposed alternative forum must be adequate and the private and public factors must sufficiently favor the alternative forum to overcome the small amount of deference still provided to plaintiff's choice of forum.

**B.  Alternative Forum**

The adequacy of the alternative forum depends on whether "the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Pollux Holding, 329 F.3d at 75.  The United Kingdom is an adequate alternative forum for this action.  It is undisputed that Plaintiff could maintain her cause of action in the United Kingdom.  Merck has agreed to appear and defend this action in the appropriate court in the United Kingdom and also has offered to waive any statute of limitations defense acquired after the action was filed in this Court.

**C.  Balancing the Private and Public Factors**

In Gulf Oil, the United States Supreme Court set forth certain private and public factors that the district court should consider in determining whether to dismiss an action on the ground of forum non conveniens.  Important private considerations include ease of access to evidence, the cost for witnesses to attend trial, the availability of compulsory process, and any other factors "that make trial of a case easy, expeditious and inexpensive." 330 U.S. at 508.  The Gulf Oil Court provided the following regarding relevant public factors:

> Factors of public interest also have place in applying the doctrine.  Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin.  Jury duty is a burden that ought not to be imposed upon the

10

> people of a community which has no relation to the litigation.  In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in [areas] where they can learn of it by report only.  There is a local interest in having localized controversies decided at home.  There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the [law] that must govern the case, rather than having a court in some other forum untangle problems in conflict of law, and in law foreign to itself.

Id. at 508-09.

### 1. Public Factors

Pharmaceutical products liability cases involving an allegedly unsafe drug that was sold in a foreign country subject to its regulatory scheme, and then later ingested by plaintiff in that foreign country, are especially susceptible to forum non conveniens dismissal due to the foreign country's strong interest in the matter.  See Ledingham v. Parke-Davis Div. of Warner-Lambert Co., 628 F. Supp. 1447, 1451 (E.D.N.Y. 1986) ("[W]hen a regulated industry, such as the pharmaceutical industry, is involved in an action, the country where the injury occurs has a particularly strong interest in the litigation.").  In these cases, the foreign nation has an interest in protecting its citizens from alleged injuries caused by events occurring within its borders.  Moreover, the foreign country in which the product was sold and ingested has the foremost interest in defining the standard of conduct which pharmaceutical companies

11

must follow in distributing products under its regulatory scheme. As explained by Judge Connor:

> The forum whose market consumes the product must make its own determination as to the levels of safety and care required. That forum has a distinctive interest in explicating the controlling standards of behavior, and in enforcing its regulatory scheme. The standards of conduct implemented, and the level of damages assessed, will reflect the unique balance struck between the benefit each market derives from the product's use and the risks associated with that use; between the community's particular need for the product and its desire to protect its citizens from what it deems unreasonable risk. The forum's assessment will affect not merely the quality of the product, but also the price, quantity, and availability to its public. Such an assessment must remain the prerogative of the forum in which the product is used[.]"

Doe v. Hyland Therapeutics Div., 807 F. Supp. 1117, 1129 (S.D.N.Y. 1992); see also Harrison v. Wyeth Labs., 510 F. Supp. 1, 4 (E.D. Pa. 1980) ("Questions as to the safety of drugs marketed in a foreign country are properly the concern of that country; the courts of the United states are ill-equipped to set a standard of product safety for drugs sold in other countries."). Other courts have agreed, dismissing pharmaceutical products liability actions on the grounds of forum non conveniens, finding that the foreign country in which the allegedly unsafe product was prescribed, sold, and ingested had the greatest interest in the action. See, e.g., Dowling v. Richardson-Merrell, Inc., 727 F.2d 354, 356 (6th Cir. 1985) (finding that the interest of the United Kingdom "is

overwhelmingly apparent" and the forum non conveniens analysis "was not even close with respect to public interest factors"); In re Vioxx Prod. Liab. Litig., 448 F. Supp. 2d 741, 748 (E.D. La. 2006) (finding that Italy and France had the greatest interest in hearing claims brought by their respective residents).

The same considerations are present in this matter. The United Kingdom has a strong interest in protecting its citizens from unsafe products and defining standards of product safety under its regulatory scheme. Plaintiff has not articulated a single public factor that favors the New York venue. Although the United States may not have significant interest in hearing Miller's claim, it does have an interest in the Defendants' conduct as Defendants are United States companies that marketed and sold the same allegedly unsafe drugs to United States residents. Unsurprisingly, before this Court are similar actions brought by United States plaintiffs alleging injury from the Fosamax and/or Actonel that they were prescribed and ingested in the United States. The presence of other similar actions further reduces the United States' interest in this particular matter as they "ensure[] that appropriate standards of care are applied," and if the Defendants are found liable, then they and others will be deterred from engaging in similarly

inappropriate conduct in the future. In re Rezulin Prod. Liab. Litig., 214 F. Supp. 2d 396, 399 (S.D.N.Y. 2002).

Futhermore, the Court is not persuaded by Plaintiff's argument that Merck has failed to disclose adequate information to allow the Court to properly balance the public factors. Regardless of where the drugs at issue were manufactured or the details of Merck's approval by British regulators, the strong interest of the United Kingdom in this litigation substantially outweighs the seemingly nonexistent connection to New York.

The administrative concerns cited by the Gulf Oil Court, namely calendar congestion and juror allocation, are less significant considerations in the present matter, but nonetheless weigh in the favor of dismissal.  The Court should avoid the real prospect of burdening the citizens of New York with jury duty for a trial with little local connection. Plaintiff contends that this concern "is more theoretical than real" as several other cases already have been selected for trial, and the parties "presumably will settle, favorably or unfavorably," after those trials are completed. (P. Opp'n at 5.) The Court cannot assume that this action will settle prior to trial.  Esheva v. Siberia Airlines, 499 F. Supp. 2d. 493, 500 (S.D.N.Y. 2007) ("The prediction about how many trials will be necessary is in any event nothing more than a guess.").

Even assuming that Plaintiff's prediction of an inevitable global settlement is correct, the willingness to settle regardless of the terms evidences the already enormous burden that this complex litigation places on the parties. The Court endures the same burden. The inclusion of foreign claims into this multi-district litigation would only further complicate this matter at virtually all stages and exacerbate the administrative burdens on the Court. See In re Vioxx, 448 F. Supp. 2d at 749 ("Although the multidistrict litigation system crafted by Congress in 28 U.S.C. § 1407 contemplates some degree of congestion . . . retaining jurisdiction over the purported classes of [foreign] residents would exacerbate any administrative difficulties that this Court may already be experiencing."). It also appears likely that foreign tort law will apply in this matter. Although the Court acknowledges that "there are few if any countries in the world whose body is of law is more amenable to application in the United States than Great Britain's," Gross v. British Broadcasting Corp., 386 F.3d 224, 233-34 (2d Cir. 2004), the Court's relative unfamiliarity with foreign tort law nonetheless slightly favors dismissal. See Cavlam, 2009 WL 667272, at *8.

   **2.   Private Factors**

The relative ease of access to sources of proof in this case also suggests that the United Kingdom is the appropriate

forum. The documentary evidence relevant to this action comes from both the United Kingdom and the United States. Because Miller allegedly was prescribed and ingested Fosamax and Actonel in England, developed ONJ in England as a result, and thereafter was treated for the condition in England, it follows that the overwhelming majority of evidence regarding injury, causation, and damages is located there. On the other hand, it is undisputed that much of the proof with respect to liability is located within the United States. Plaintiff contends that the "non-medical documentary evidence" consists of Merck's internal documents, which "have been obtained by plaintiffs' counsel in [the MDL] and they are, and always have been, located here in the United States." (P. Opp'n at 6.)

The circumstances surrounding this motion are not typical, however, as the original location of the documentary evidence does not provide a full picture of the relative conveniences of the alternative forums. Merck and the PSC have engaged in substantial discovery since the filing of Miller's complaint roughly three years ago and the Court recently tried the first of three bellwether cases in this multidistrict litigation. It seems unlikely that Merck would need to produce any additional documentary evidence located in the United States after refiling. Plaintiff concedes in its opposition that the pertinent records in the United States are under the Merck's

16

control and already have been produced. In the event that Merck must produce additional material, it can be provided by Merck without additional burden regardless of the ultimate venue. A discovery record is being generated in regard to Actonel litigation as well. The unique aspect of Miller's action is the circumstances surrounding her alleged use of the prescription drugs, injury, and causation. Discovery into these issues is best facilitated by dismissal in favor of the United Kingdom forum. As Judge Kaplan reasoned in the Rezulin MDL:

> [T]he fact that this is an MDL changes the calculus of convenience. An enormous discovery record is being generated in this matter, one probing all aspects [of] defendant's actions and possible liability. All or substantially all of it will be available to plaintiff for use in any [foreign] litigation he may bring. . . . The practical reality is that all or substantially all of the liability discovery and preparation will be done in the MDL by the Plaintiffs' Executive Committee, not by the plaintiff. The focus of plaintiff's individual case therefore is likely to be on plaintiff's illness and on causation in [her] individual case, not on the defendants' actions. Those matters obviously would be litigated more conveniently in [the foreign jurisdiction], thus making the private interest factors favor that forum.

In re Rezulin, 214 F. Supp. 2d at 400-01. Similarly, Plaintiff argues that the parties also already have compiled "nearly 100%" of Miller's medical records in an electronic database that is accessible to both parties in the United States. (P. Opp'n at 5-6.) The Court assumes that this database can also be accessed in the United Kingdom. Regardless, I am unconvinced that all of

Miller's medical records that may bear on her lawsuit have been made accessible to the parties in the United States. Merck contends that the electronic database does not contain a single document indicating that she ever was prescribed Fosamax or any medical records from her prescribing physician.

Plaintiff's position that private factors favor the United States because the relevant documents from the United Kingdom have already been made available electronically in the United States also ignores importance of available witnesses. Miller's doctors are located in the United Kingdom and are not subject to compulsory process in the United States. Plaintiff contends that Merck has "made no attempt to identify the witnesses each side would call . . . presumably because all of Merck's witnesses reside in the United States." (P. Opp'n at 2.)[2] Plaintiff is most likely correct to assume that most of defendant's witnesses are located within the United States, but to suggest that "the Court retain the case in New York on the basis of the alleged inconvenience to defendants of litigating in plaintiff's home forum . . . undermines [her] argument to a material degree." In re Rezulin, 214 F. Supp. 2d at 399. Plaintiff also contends that she would not be able to compel the appearance of Merck employees located in the United States. For

---

[2] Merck "need not detail all the witnesses likely to be called"; rather, they must provide sufficient information to

this reason, the Court will condition dismissal on Defendants agreeing to produce witnesses under its employ that the British court finds necessary for plaintiff to prove her case.

## CONCLUSION

For the foregoing reasons Merck's motion to dismiss the complaint is granted subject to the following conditions:

1) Defendants consent to jurisdiction and acceptance of process in any suit plaintiff Miller files in the appropriate United Kingdom court on the claims that are the subject of the instant suit.

2) Defendants agree to waive any statute of limitations defense acquired after the action was filed in this Court.

3) Defendants agree to produce at trial any witness under their employ located beyond the subpoena power of the British court, provided that the British court finds the witness necessary for plaintiff's case.

4) Defendants will advise the Court of their consent to these conditions within thirty days of this Order.

**SO ORDERED.**
Dated:   New York, New York
         October 21, 2008

_____
JOHN F. KEENAN
United States District Judge

---

allow the Court to balance the conveniences. <u>Ledingham</u>, 628 F. Supp. at 1451 n.2.